[Crim. No. 699.   Department Two. — May 29, 1901.]

THE PEOPLE, Respondent, v. SAMUEL B. TERRILL, Appellant.

CRIMINAL LAW — PASSING FICTITIOUS NOTE WITH INTENT TO DEFRAUD — INDICTMENT — NOTE OF "INDIVIDUAL." — An indictment based upon section 476 of the Penal Code, for knowingly and with intent to defraud a person named, passing to him as true and genuine a fictitious note, "purporting to be the note of an individual, to wit, Leon McAbee (when in fact there was no such *person* in existence)," is not fatally defective for not alleging that there was no such "*individual*" in existence.   A person of common understanding would know what is intended by the indictment.

ID. — JUDGMENT FOR "FORGERY" — PROTECTION OF DEFENDANT. — The word "forgery," if improperly used in pronouncing the judgment, cannot mislead the defendant to his injury, or vitiate the judgment, where the indictment, verdict, minutes, and judgment, taken together, show that the charge and conviction were based upon section 476 of the Penal Code, and furnish to the defendant complete protection against another prosecution for the same offense.

ID. — ACTS CONSTITUTING FORGERY — COMMON LAW — PENAL CODE. — The acts set forth in the indictment constitute "forgery" at common law, which is continued in this state, where not repugnant to its statutes.   Those acts are classed under "Forgery and Counterfeiting" in the Penal Code, and are punished in the same manner as forgery is punished.   They may be considered as constituting a species of forgery, where the instrument forged is wholly fictitious.

ID. — PROOF OF VENUE. — The venue is sufficiently proved by the testimony of the prosecuting witness, that the passage of the fictitious note and the defrauding of the witness occurred in the county of the venue.

ID. — PROOF OF NON-EXISTENCE OF FICTITIOUS PERSON — DIRECTORY. — Where there was evidence tending to show that no man having the name signed to the note resided in the county, a directory is admissible to show that his name did not occur therein.

ID. — FICTITIOUS NOTE OF MALE PERSON — ACKNOWLEDGMENT OF MORTGAGE — WOMAN OF SAME NAME. — Where the representations made by the defendant, and the certificate of acknowledgment of a mortgage purporting to be given to secure the note, show that the fictitious name signed to the note was that of a male person, the fact that a married woman bearing the same name came to the county after the date of the note — she never having had any property therein — does not tend to show that the note was not fictitious.

ID. — BURDEN OF PROOF. — In such case, it was not incumbent upon the prosecution to prove that the woman of the same name did not authorize her signature to the note.

ID. — VARIANCE — OMISSIONS AS TO NOTE IN INDICTMENT. — The fact that the indictment omitted to set forth the rate of interest described in the note, and a provision therein in regard to attorney's fees, does not show a material variance, where the note corresponds with the allegations made in the indictment, so far as described therein.

ID. — JEOPARDY — PREVIOUS CONVICTION — UTTERING OF FICTITIOUS MORTGAGE — VOID INDICTMENT — PROHIBITION AT DEFENDANT'S INSTANCE. — Where the defendant applied for and obtained a writ of prohibition to prevent the court from pronouncing a void judgment under an invalid indictment for the uttering of a fictitious mortgage to secure the indebtedness here involved, he cannot rely upon the conviction as a bar to the present indictment. He was not in jeopardy upon a valid indictment for the same offense.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. W. G. Lorigan, Judge.

The facts are stated in the opinion.

Jackson Hatch, and H. L. Partridge, for·Appellant.

Tirey L. Ford, Attorney-General, A. A. Moore, Jr., Deputy Attorney-General, and James M. Campbell, District Attorney, for Respondent.

COOPER, C. — Appeal from judgment and order denying motion for a new trial. The indictment is in the following language, to wit: —

"The said Samuel B. Terrill is accused by the grand jury of the county of Santa Clara, state of California, by this indictment, found this 12th day of June, A. D. one thousand eight hundred and ninety-nine, of the crime of forgery, committed as follows: The said Samuel B. Terrill, on the second day of January, A. D. eighteen hundred and ninety-seven, at the county and state aforesaid, with intent to prejudice, damage, and defraud Richard J. Hawke, uttered, published, and passed to him, as true and genuine, a fictitious note, apparently genuine and of legal efficacy, knowing the note to be fictitious; said note bearing said date, and purporting to be the note of an individual, to wit, Leon McAbee (when in fact there was no such person in existence), whereby said Leon McAbee promised to pay to said Richard J. Hawke three hundred and fifty dollars, in gold coin of the United States of America, one year after said date."

1. The defendant claims that his demurrer to the indictment should have been sustained, upon the sole ground that the facts stated do not constitute a public offense. The indictment was evidently based upon section 476 of the Penal Code, which reads as follows:—

"Every person who makes, passes, utters, or publishes, with intention to defraud any other person, or who, with the like intention, attempts to pass, utter, or publish, or who has in his possession, with like intent to utter, pass, or publish, any fictitious bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of some bank, corporation, copartnership, or individual, when in fact there is no such bank, corporation, copartnership, or individual in existence, knowing the bill, note, check, or instrument in writing to be fictitious, is punishable by imprisonment in the state prison for not less than one nor more than fourteen years."

The defendant argues that the note referred to in the indictment purported to be the note of an individual, and that the indictment alleges that there was no such "person" in existence, whereas it should have alleged that there was no such "individual" in existence. It is evident, under the section, that where the instrument is alleged to be that of an individual, the indictment must show that there is no such individual in existence, but we think the indictment in this case does show such fact. It does not contain the word "individual," but it plainly says, "the note of an individual, to wit, Leon McAbee (when in fact there was no such person in existence)." The word "person," in the connection in which it is used, evidently and plainly refers to the antecedent, "Leon McAbee." The words "such person" plainly mean such person as Leon McAbee. They do not—and cannot, by any reasonable construction, be held to—refer to a bank, corporation, or copartnership, because the indictment does not mention any bank, corporation, or copartnership. We think that a "person" of common understanding would know what is intended by the indictment.

2. It is claimed that the court adjudged the defendant guilty of "forgery," and that this was error. The verdict of the jury was: "We, the jury in the above-entitled cause, find the defendant guilty as charged in the indictment." The judgment recites: "The defendant was duly informed by the court of the

indictment presented against him on the 12th of June, 1899, of
his arraignment and plea of 'not guilty,' of his trial, and the
verdict of the jury on the 9th of November, 1899, guilty of for-
gery as charged in the information. The defendant was then
asked if he had any legal cause to show why judgment should
not be pronounced against him, to which he replied that he
had none. And no sufficient cause appearing to the court,
thereupon the court renders its judgment, that the said Samuel
B. Terrill having been duly convicted in this court of the crime
of forgery, it is therefore ordered, adjudged, and decreed," etc.
It is evident that the judgment was for the crime charged in
the indictment, and that a crime is charged under said section
476 of the Penal Code.

There is no form prescribed in the Penal Code as to what
the judgment shall contain. "If no sufficient cause is alleged,
or appears to the court, why judgment should not be pro-
nounced, it must thereupon be rendered." (Pen. Code, sec.
1202.)

"When a judgment upon a conviction is rendered, the clerk
must enter the same in the minutes, stating briefly the offense
for which the conviction was had, . . . and must, within five
days, annex together and file the following papers, which will
constitute a record of the action: —

"1. The indictment or information, and a copy of the min-
utes of the plea or demurrer;

"2. A copy of the minutes of the trial;

"3. The charges given or refused, and the indorsement
thereon; and

"4. A copy of the judgment." (Pen. Code, sec. 1207.)

In speaking of the record in a criminal case, this court said in
*In the Matter of Ring*, 28 Cal. 252: "The several papers specified,
when so annexed together and filed, are expressly declared to
be the *record* of the action, and that is the record which would
have to be produced in support of a plea of former conviction.
That the several papers specified in the four hundred and
sixty-second section enter into and become a part of the record
must not be lost sight of when we come to determine what it is
essential that the judgment itself should contain, for where
several papers are thus united in chronological order, and made
one in legal intent, it cannot be claimed that the contents of
one should be repeated in another. If they all, taken together,
furnish facts sufficient to protect the defendant against another

prosecution for the same offense, it cannot with any show of reason be claimed that the record is defective in any matter of substance. From the mere fact that these several papers are taken into and made a part of the record, it is clear that each one was intended merely to tell its own story,—or, rather, to relate its particular branch of the whole history. Thus the indictment states the jurisdictional facts, the nature of the offense, and the facts and circumstances, so far as they are material. The other papers give the history of the trial, including the verdict; and the judgment, which constitutes the last chapter, merely finishes the account by stating of what offense the defendant was finally convicted, and the penalty imposed by the court. The judgment need not, and it was not intended that it should, repeat anything contained in the papers which precede it, for, in view of the fact that they go into the record and make a part of it, such repetition would be idle, and serve no useful purpose."

Applying the rule laid down in the above case, the defendant cannot be again prosecuted for the same offense. The word "forgery," if improperly used in pronouncing judgment, could not in any way have misled or injured defendant. The indictment, verdict, minutes, and judgment, taken together, furnish defendant complete protection against another prosecution for the same offense.

It is provided in the Penal Code (sec. 1404): "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

Section 1258 of the Penal Code provides that after hearing the appeal, this court must "give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

In *People* v. *Eppinger*, 109 Cal. 294, where a similar objection was made to the arraignment, this court said: "The minutes of the court show that defendant was arraigned upon an information charging him with forgery, whereas, in fact, it was upon an indictment charging him with uttering a fictitious instrument. But these ministerial irregularities do not affect any of the substantial rights of the defendant, who was in fact arraigned upon indictment, a copy of which was given to him,

and he was thus fully informed of the nature of the charge against him, and answered it by his plea."

Indeed, we are not prepared to say that defendant was not found guilty of "forgery." The acts set forth in the indictment would be forgery at common law. (2 McLain on Criminal Law, sec. 764, and cases cited; 1 Bishop on Criminal Law, sec. 572; 1 Wharton on Criminal Law, secs. 659, 660.)

The common law of England, so far as not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of this state, is the rule of decision in all the courts of this state. (Pol. Code, sec. 4468.) Under the heading of "Forgery and Counterfeiting," chapter IV, title XIII, of the Penal Code (secs. 470–482), we find section 476. Sections 470, 471, and 472 provide that every person who, with intent to defraud another, does certain acts therein enumerated is guilty of forgery. Section 473 provides that forgery is punishable by imprisonment in the state prison for not less than one nor more than fourteen years. Then, among other sections, follows section 476, which provides that any person who utters or has in his possession any fictitious note, with intent to defraud any other person, is punishable by imprisonment in the state prison for not less than one nor more than fourteen years. The acts enumerated in section 476 are thus punished the same as forgery: such acts are made a crime. No name is given to such crime, unless we regard it as a species of forgery, concerning which the chapter treats. Section 470 expressly says that every person who utters, or attempts to pass as true and genuine, any false or forged promissory note, knowing the same to be false or forged, with intent to prejudice or damage another person, is guilty of forgery. The indictment in this case charges defendant with uttering and passing as true and genuine a false note. It also describes the note as fictitious, and thus brings it within the express provisions of section 476.

In *People* v. *Elliott*, 90 Cal. 586, it was held that where there is no such person or firm in existence as that the name of which is signed to the check, then the check is fictitious, and the prosecution should be under section 476, but the court did not say that such act was not forgery.

In the opinion it is said: "The law appears to recognize a distinction between forged instruments purporting to have the signature of a person in existence, and those where the signa-

ture is purely and entirely fictitious. . . . Section 470 of the Penal Code is quite broad in its terms, and in the absence of said section 476, it might probably be construed broad enough to include fictitious instruments as referred to in said section; but the legislative mind having been directed specially to that class of instruments with reference to the offense of forgery, it would seem the act of making or passing a fictitious check could only be prosecuted when brought within the requirements and conditions of said section." The court did not say such fictitious instrument was not forgery. On the contrary, it speaks of forged instruments when the signature is fictitious.

In *People* v. *Eppinger*, 105 Cal. 38, it is said: "A distinction is thus made between the forgery of a check upon an existing person, and the making and passing of a fictitious instrument purporting to be the check of a person who has no existence." There, the principal point was, that the information alleged that the check was signed by "M. Howell & Co.," but did not allege that there was no such partnership or corporation in existence at the time.

In *People* v. *Lee*, 128 Cal. 331, it is said: "The defendant, a Chinese, was accused of the crime of forgery, committed by uttering, etc., . . . a fictitious check."

It thus seems to have been generally regarded as forgery by this court. To decide that the uttering of a fictitious check should be prosecuted under section 476 of the Penal Code is not to decide that a fictitious check is not a forged check, and that the uttering of such a check is not forgery. In a late case the supreme court of Oregon appears to have fully considered the matter, and in its opinion says: "The law is well settled that the signing of a fictitious name to an instrument with a fraudulent intent constitutes forgery."

The Revised Statutes of Missouri (sec. 3653) provide that the false making or forging of any instrument in writing for the payment of money, purporting to be the act of another, to which shall be affixed any fictitious name, or the name or pretended name of any person not in existence, shall be deemed a forgery. It was held in *State* v. *Minton*, 116 Mo. 616, that although the statute made such act a forgery, yet the indictment, under the statute, must allege that a fictitious name was affixed to the instrument. This is in entire accord with the holding of this court in the cases hereinbefore cited. The indictment or information must allege facts showing that a

crime has been committed within the terms of section 476 of the Penal Code, because the legislature has specially defined the acts making it a crime to utter or forge a fictitious instrument.

*People* v. *Eppinger*, 114 Cal. 353, seems to be in conflict with what has been said, and is evidently based upon a misapprehension of *People* v. *Elliott*, 90 Cal. 586. The opinion commences by saying: "That the crime of forgery, as defined in section 470 of the Penal Code, and that of making and passing a fictitious check with intent to defraud, under section 476 of the same code, are different offenses was held in *People* v. *Elliott*, 90 Cal. 586."

An examination of *People* v. *Elliott*, 90 Cal. 586, shows that the ruling was not quite so broad as stated. The court simply held that as the legislature had made special provision as to the forgery of fictitious instruments, the act of making or passing a fictitious check could only be prosecuted when the allegations of the information showed an offense under said section 476. The opinion in *People* v. *Eppinger*, 114 Cal. 353, proceeds upon the theory that in the same case in 109 Cal. 294, this court had directed the contents of the judgment. In the latter case the judgment was reversed because the jury did not find upon the issue as to prior conviction. What is said as to the contents of the judgment to be thereafter entered was *obiter dictum*.

3. It is urged that the evidence is insufficient to sustain the verdict, for the reasons, that the venue is not proven; that the evidence does disclose the existence of the person claimed to be fictitious; that the note received in evidence differed materially from the note described in the indictment; and finally, that defendant has been already convicted of the same offense charged in the indictment.

The witness Hawke testified that his place of residence was Almaden; that he gave defendant four hundred dollars to be loaned; that, in a conversation, defendant said to him that he had loaned the money to Leon McAbee on good security, and that he would send witness the papers; that he received the papers a week or two afterwards, which included the note; that the papers came to witness by mail; and that all these matters took place in Santa Clara County. This was sufficient proof of the venue.

The prosecution offered evidence tending to show that there

was no such man as Leon McAbee in Santa Clara County; that his name did not appear in the directory. This evidence was competent. (*People* v. *Eppinger*, 105 Cal. 36.) The purported Leon McAbee was a male person, as appears from the certificate of acknowledgment to the mortgage given to secure the note, and the statement made by defendant to Hawke. The defendant offered evidence as to the existence of a Leon McAbee in Santa Clara County, but the evidence shows this "Leon McAbee" was a married woman, and never owned any property in the county; that she came from Watsonville and began proceedings for a divorce in October, 1897; that the suit was still pending at the time of the trial of this case in November, 1899, and said woman told one Jacobs that she was going to Marysville about two and a half months before this trial. In such case it was not incumbent on the prosecution to prove that the woman "Leon McAbee" did not authorize her signature to the note. There is no evidence tending to show that the signature purported to be hers. The note received in evidence corresponded with the note described in the indictment. There was no material variance. The fact that the indictment did not set forth the rate of interest and the provision in regard to attorney's fees was immaterial. (*People* v. *Terrill*, 132 Cal. 497.) It is finally claimed that the evidence shows that defendant had already been convicted of the offense charged in this indictment. The evidence shows that the crime of which defendant was convicted, and which it is claimed is a bar to the present action, was the uttering of a certain mortgage dated January 2, 1897, purporting to have been made by Leon McAbee in favor of Richard Hawke, upon lands in Santa Clara County, to secure the payment of an indebtedness of $350.

The first indictment in said case was demurred to in the court below, and the demurrer sustained. The court ordered the case "resubmitted to the present grand jury." The same grand jury, upon the same facts upon which defendant had been charged in the first indictment, returned into court another indictment for the same offense. Defendant was tried upon the last indictment so found, and a verdict of guilty returned against him. He applied for, and was granted, a writ of prohibition by this court, prohibiting the court below from pronouncing judgment or proceeding further in said matter, for the reason that the second indictment found by the same

grand jury was void. The defendant, therefore, having at his own request procured a judgment of this court that the indictment upon which he was tried and convicted is void, cannot be heard to rely upon such conviction as a bar to the present indictment. He has never before been in jeopardy upon a valid indictment for the same offense. (Pen. Code, secs. 1021, 1023; *People* v. *Schmidt,* 64 Cal. 260; Bishop's New Criminal Law, secs. 1021, 1022.)

It follows that the judgment and order should be affirmed.

Haynes, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Henshaw, J., McFarland, J., Temple, J.

Hearing in Bank denied.